UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANKLIN TAVERAS, | : |
| Petitioner, | : Civ. No. 16-3753 (KM) |
| v. | : |
| CHARLES L. GREEN, | : OPINION |
| Respondent. | : |

**KEVIN MCNULTY, U.S.D.J.**

### I. INTRODUCTION

The petitioner, Franklin Taveras, is an immigration detainee currently lodged at the Essex County Correctional Facility in Newark, New Jersey. He is proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, the habeas petition will be granted to the extent that a bond hearing before an Immigration Judge ("IJ") will be ordered to take place within 14 days.

### II. BACKGROUND

Mr. Taveras is a native and citizen of the Dominican Republic. He entered the United States in 1990. Mr. Taveras has several criminal convictions in New Jersey, including receiving stolen property, concealing merchandise from a store, conspiracy theft, theft from a person and distribution of heroin. A Notice to Appear was issued by the United States Department of Homeland Security against Mr. Taveras in December, 2015, and he was placed into immigration detention at that time.

On November 23, 2016, an IJ ordered Mr. Taveras removed after a hearing on his claim for relief under the Convention Against Torture. However, Mr. Taveras has appealed that

decision to the Board of Immigration Appeals ("BIA"). It seems that appeal is still pending before the BIA.

In June, 2016, Mr. Taveras, through counsel, filed this habeas petition. He requests the he be immediately released from immigration detention or that a bond hearing be held. Respondent filed a response in opposition to the habeas petition in September, 2016. Mr. Taveras then filed a reply in support of his habeas petition. Because an immigration hearing before an IJ had been scheduled for October 2016, I ordered respondent to provide an update on Mr. Taveras's status. Respondent reported that an IJ had ordered Mr. Taveras removed on November 23, 2016, but that Mr. Taveras had appealed that decision to the BIA. Mr. Taveras's detention has now lasted over one year. Mr. Taveras, in response to respondent's status report, continues to argue that he is entitled to a bond hearing before an IJ.

### III.   DISCUSSION

Because Mr. Taveras's appeal of the IJ's order of removal to the BIA remains pending, it is not final. *See* 8 C.F.R. § 1241.1(a) (order of removal by IJ becomes final upon dismissal of appeal by BIA). The Attorney General has the authority to detain aliens before the issuance of a final order of removal. This period of detention is known as the "pre-removal" period. Detention of an alien in the pre-removal period is governed by Section 1226 of Title 8 of the United States Code. Section 1226(a) permits the Attorney General to detain or release an alien pending a decision on whether the alien is to be removed from the United States:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—

> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General;
> (B) conditional parole; ...

8 U.S.C. § 1226(a). "Except as provided in subsection (c)" is included because, under Section 1226(c), certain criminal aliens are subject to mandatory pre-removal detention:

> The Attorney General shall take into custody any alien who—
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(a)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
> when the alien is released, without regard to whether the alien is release on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).

In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), the United States Court of Appeals for the Third Circuit established a framework for analyzing the permissibility of pre-removal detention:

> [Title 8, United States Code, Section] 1226(c) contains an implicit limitation on reasonableness: the statute authorizes only mandatory detention that is reasonable in length. After that, § 1226(c) yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose.... Should the length of [an alien's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof.

656 F.3d at 235. *Diop* did not state a specific length of pre-removal-order detention beyond which a petitioner would be entitled to a bond hearing. *See id.* at 234; *see also Carter v. Aviles,*

3

No. 13–3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014) ("[T]he Third Circuit has not set a 'universal point' when mandatory detention under § 1226(c) is unreasonable.") (citing *Leslie v. Attorney Gen.*, 678 F.3d 265, 270–71 (3d Cir.2012)); *Barcelona v. Napolitano,* No. 12–7494, 2013 WL 6188478, at *1 (D.N.J. Nov. 26, 2013) ("The Court of Appeals in *Diop* declined to adopt a rule that a hearing was required after a certain fixed amount of time in pre-removal detention.") (citation omitted). Instead, the Third Circuit noted that "[r]easonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of a particular case." *Diop,* 656 F.3d at 234. A reasonableness determination "must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case." *Id.* However, "'the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds.'" *Chavez–Alvarez v. Warden York Cnty. Prison,* 783 F.3d 469, 474 (3d Cir. 2015) (quoting *Diop,* 656 F.3d at 232, 234).

In *Chavez–Alvarez,* the Third Circuit observed that some time after six months, and certainly within a year, the burden to the petitioner's liberties would outweigh any justification to detain the petitioner without a bond hearing. *See id.* at 478. A petitioner's bad faith, too, has at least the potential to influence the determination of whether a bond hearing should be ordered. *See Chavez-Alvarez,* 783 F.3d at 476 ("Because we conclude that Chavez-Alvarez did not act in bad faith, we do not need to decide here whether an alien's delay tactics should preclude a bond hearing.").

A. <u>Detention When Released from Criminal Custody</u>

Mr. Taveras complains that his detention is invalid because he was not placed into immigration detention immediately after he was released from incarceration for his New Jersey

4

state convictions. This, he says, violates the statutory provision that immigration detention may occur "when the alien is released."

That argument is foreclosed by binding Court of Appeals authority. In *Sylvain v. Attorney General*, 714 F.3d 150, 156-57 (3d Cir. 2013), the Third Circuit held that the government retains the authority to take aliens into mandatory detention under § 1226(c) even if it does not do so immediately upon their release from criminal custody. "[M]andatory detention does not require immediate detention." *Id.* at 156. "Even if the statute calls for detention 'when the alien is released,' and even if 'when' implies something less than four years, nothing in the statute suggests that immigration officials lose authority if they delay." *Id.* at 157. Accordingly, Mr. Taveras is not entitled to habeas relief based on his claim that he was not immediately placed into immigration detention upon his release from his state convictions.

B. <u>Reasonableness of Immigration Detention</u>

Mr. Taveras also argues that he is entitled to habeas relief based upon the amount of time that he has been in immigration detention—currently, thirteen months. As indicated above, the Third Circuit stated in *Chavez-Alvarez* that certainly after the passage of one year of pre-removal detention, the burden to the petitioner's liberties would outweigh any justification to detain the petitioner without a bond hearing. Respondent, undeterred, resists the demand for a bond hearing. Respondent places blame for approximately two-and-one-half months of this thirteen month period on Mr. Taveras (he substituted counsel prior to a merits hearing, necessitating an adjournment), and urges that Taveras has not raised a bona fide challenge to his removal.

That Mr. Taveras may be partially responsible for the delay is not dispositive. In *Chavez-Alvarez*, the Third Circuit explained that "[t]he primary point of reference for justifying the alien's confinement must be whether the civil detention is necessary to achieve the statute's

5

goals: ensuring participation in the removal process, and protecting the community from the danger that he or she poses." 783 F.3d at 475. Thus "detention can become unreasonable, and a petitioner can be entitled to a bond hearing, even where the Government itself acted reasonably and is not reasonable for the delays in the conclusion of an alien's immigration proceedings." *Rodriguez v. Green*, No. 16-4431, 2016 WL 7175597, at *2 (D.N.J. Dec. 7, 2016). Of course that is not license for detainees to proceed in bad faith; "aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." *Chavez-Alvarez*, 783 F.3d at 476 (footnote omitted). The detainee's good or bad faith requires an assessment of the circumstances:

> The issue of good faith is necessarily decided on the individual circumstances, but the analysis is more complex than the method posed by the Government: counting wins and losses. The most important consideration for us is whether an alien challenges aspects of the Government's case that present real issues, for example: a genuine factual dispute; poor legal reasoning; reliance on a contested legal theory; or the presence of a new legal issue. Where questions are legitimately raised . . . we cannot "effectively punish" these aliens for choosing to exercise their legal right to challenge the Government's case against them by rendering "the corresponding increase in time of detention [as] reasonable."

*Chavez-Alvarez*, 783 F.3d at 476 (citation omitted).

Mr. Taveras has now been in immigration detention for thirteen months. Nothing about the circumstances under which he sought and received a continuance of two-and-one-half months to obtain new counsel suggests bad faith. This, without more, does not disentitle him to a bond hearing.

Respondent contests the bona fides of Mr. Taveras's claim of non-removability. It is true that an IJ has now denied that claim, but that, without more, does not establish that he acted in bad faith om pursuing his claim for relief under the Convention against Torture. *See, e.g., Peinado v. Green*, No. 16-5325, 2016 WL 7104890, at *2 (D.N.J. Dec. 6, 2016) (citing *Chavez-*

6

*Alvarez* and noting that "The fact that the IJ sustained the removal order and denied relief does not establish that Petitioner's requests for relief from removal are nothing more than a bad faith attempt to delay proceedings.") That IJ ruling is now on appeal, and it will be tested by the appeal process.

In light of the length of time Mr. Taveras has been in immigration detention (thirteen months) and the lack of persuasive evidence of bad faith, I will find that he is entitled to relief.

C. Type of Relief

Respondent argues that this Court should not order a bond hearing before an IJ, but instead, should provide for an initial custody determination by a deportation officer. The premise of this argument seems to be that, once a § 1226(c) pre-removal detention is found to be unreasonable, it should be judicially converted to a § 1226(a) post-removal detention. Respondent cites to *Gordon v. Johnson*, 300 F.R.D. 31 (D. Mass. 2014), a decision that was vacated after Respondent filed its initial brief, *see Gordon v. Lynch*, 842 F.3d 66 (1st Cir. 2016).[1]

Rather than rely on a non-binding, distinguishable and now vacated decision from the District of Massachusetts, I will be guided by cases from this Circuit in determining what relief is appropriate for Mr. Taveras. Since *Chavez-Alvarez*, courts within this District have consistently ordered the IJ to conduct a bond hearing upon a finding that a petitioner's pre-removal immigration detention has become unreasonably long under the principles announced in *Chavez-Alvarez*. *See, e.g., Rodriguez*, 2016 WL 7175597, at *3 (granting habeas relief and directing IJ to provide petitioner with a bond hearing).

---

[1] Even the vacated *Gordon* decision, however, would not apply. It rests on the doctrine—rejected by the Third Circuit, *see supra*—that immigration detention is unreasonable unless it occurs within forty-eight hours of release from the relevant predicate custody. *See Gordon*, 300 F.R.D. at 35. As noted *supra*, under Third Circuit law, § 1226(c) does not require that the government immediately place the petitioner into immigration detention when he is released from criminal custody. *See Sylvain*, 714 F.3d 150.

7

## IV.  CONCLUSION

For the foregoing reasons, this Court I will grant Mr. Taveras's petition for writ of habeas corpus to the extent that I will direct an IJ to provide him with a bond hearing within 14 days, and that the Respondent shall report the result to this Court within 7 days thereafter. An appropriate order will be entered.

DATED: January 20, 2017

_____
KEVIN MCNULTY
United States District Judge

8